Argued December 7, 1960, affirmed January 18, 1961

# LINN PLYWOOD CORPORATION ET AL *v.*
# RODDIS PLYWOOD CORPORATION

358 P. 2d 555

*Orval N. Thompson*, Albany, argued the cause for appellants. On the briefs were Weatherford & Thompson, Albany.

*Raymond P. Underwood*, Portland, argued the cause for respondent. With him on the brief were Mautz, Souther, Spaulding, Kinsey & Williamson, Portland.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and King, Justices.

PERRY, J.

The sole issue presented by this appeal is whether or not the defendant Roddis Plywood Corporation breached a material covenant of an agreement entered into with the plaintiff Linn Plywood Corporation, thus giving the plaintiffs a right of rescission.

The record discloses that the Linn Plywood Corporation (which we will hereinafter refer to as "Linn") is a manufacturer of plywood and entered into an agreement with the Roddis Plywood Corporation (which we will hereinafter refer to as "Roddis") to dispose of, by sale, the plywood manufactured by Linn.

The material parts of the contract involved in this controversy are as follows:

"1. Commencing April 1, 1954, Roddis shall be the exclusive sales representative for the sale of all plywood produced during the term of this agreement by Linn at said plant as hereinafter provided, except that Linn shall have the right to sell for

its own account and without commission to Roddis not over 100,000 square feet per month of plywood to purchasers in, and for consumption in, the Albany, Oregon marketing area * * *.

"* * * * *

"3. Roddis agrees to use its best efforts to obtain purchasers for all plywood produced by Linn at said plant hereunder, except plywood produced for Linn's Albany sales. * * *

"4. Roddis will make every effort to place orders for plywood with Linn at least thirty (30) days prior to the date that shipment thereof is to be made. *Linn shall have the right, however, within ten (10) days after receipt of such order to reject any such order if the specifications thereof do not conform to the thickness, types, grades, sizes and quantities of plywood produced by Linn;* provided, however, that Linn will, in fixing such thickness, types, grades, sizes and quantities, consult with and to the greatest extent possible be guided by the desires of Roddis with respect thereto. * * * (Italics supplied.)

"5. * * * All plywood manufactured and sold hereunder shall be of good quality for the grade specified and as a minimum standard shall conform to the applicable customary grading rules for plywood as established by the Douglas Fir Plywood Association and Linn agrees to maintain its membership in said Association during the time that this agreement shall remain in force. All plywood sold pursuant to Roddis' purchase orders hereunder shall bear the stamp of the Douglas Fir Plywood Association, with the exception of products not covered under Douglas Fir Plywood Association Grading Rules, and shall bear such trademarks or trade or brand names as may from time to time be specified by Roddis. * * * If the Douglas Fir Plywood Association shall, for any reason, cease to function or furnish standards for grading, then the U. S. Department of Commerce Commercial Standards shall be used as the stand-

ards for grading hereunder instead of the grading rules of the Douglas Fir Plywood Association."

Subsequent to the execution of this agreement, Linn suffered financially and a receiver was appointed to operate the plywood mills. During this period, because of its financial difficulties, Linn was unable to purchase high-grade Douglas Fir peeler logs and consequently produced a low-grade veneer which contained pockets of wood rot. This type of veneer is generally referred to throughout the record as "white speck."

Roddis refused to accept the responsibility of attempting to dispose of this "white speck" plywood, which was labeled "CS45-55" by Linn, and this refusal is the basis of Linn's contention that the contract was breached.

The trial court interpreted the contract to place no duty upon Roddis to sell for the benefit of Linn the "white speck" plywood which did not carry the Douglas Fir Plywood Association marking, and, therefore, denied Linn the right of rescission. From this decree the plaintiffs have appealed.

■ There can be no question but that under the terms of the third paragraph of the agreement, standing alone, Roddis was to use its best efforts to sell all Douglas Fir plywood produced by Linn, except a portion sold locally. Therefore, we must look to the other covenants to determine whether or not it was the intention of the parties that Roddis had a right to refuse to use its best efforts to sell any of the Douglas Fir plywood manufactured by Linn which was not marked to show it was graded under the Douglas Fir Plywood Association Grading Rules.

It is equally clear that under the terms of paragraph 5 of the agreement Linn would manufacture ply-

wood and Roddis would sell plywood that as a minimum would meet the standard for plywood quality set by the Douglas Fir Plywood Association and Linn would stamp the plywood with the association's grade mark to show that the minimum standard for that grade had been met. Unless it can be said that the exception therein controls the relationship of the parties with reference to the inferior grade manufactured by Linn, and referred to as "white speck", Roddis must prevail.

It is the contention of Linn that the Douglas Fir Plywood Association had no grade specification for this "white speck" plywood and, therefore, this plywood fell within the exception. Linn states: "We submit that the purpose of this provision in the contract was to take care of the production of plywood such as "white speck" plywood which was not covered by D. F. P. A. grading rules."

It is the further contention of Linn that, while this so-called "white speck" plywood was not as good quality as the lowest grade of structural plywood approved by the Douglas Fir Plywood Association, it was, nevertheless, good structural plywood.

The difficulty with this argument is that the Douglas Fir Plywood Association in establishing its structural grades refused to recognize as a structural grade a panel exceeding its considered maximum of "white speck." If a panel exceeds its allowance of "white speck" or other defects, it may, nevertheless, receive the approval of the association, but not as a structural plywood. This lower grade is designated by the association and stamped as "Plykrate" (a non-structural plywood) which, of course, brings a lesser return in the market than the lowest structural grade.

Therefore, the difficulty lies, not in the fact that

the Douglas Fir Plywood Association does not have grading rules covering a panel containing "white speck", but that its rules will not admit to a structural grade the amount of "white speck" contained in some of Linn's products.

Had Linn wished to require Roddis to use its best efforts to dispose of, by sale, the fir plywood panel referred to as "white speck", it could have stamped it "Plykrate." If Roddis then refused to attempt to sell the panels it would have breached the agreement.

■ Under the terms of the agreement it appears to us that the right lay with Roddis to require this inferior grade of plywood to be stamped "Plykrate." Roddis's failure to require such stamping would not, however, be a breach of its obligation under the contract.

Being of the opinion that there was no breach of the obligations of the contract by Roddis, Linn was not entitled to rescind.

The judgment of the trial court is affirmed without costs to either party.